# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KM-01020-COA

ASHLEY NICOLE TURNER A/K/A ASHLEY N.        APPELLANT
TURNER

v.

STATE OF MISSISSIPPI AND GRENADA           APPELLEES
COUNTY, MISSISSIPPI

DATE OF JUDGMENT:            08/15/2024
TRIAL JUDGE:                 HON. ALAN D. LANCASTER
COURT FROM WHICH APPEALED:   GRENADA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      ASHLEY NICOLE TURNER
ATTORNEY FOR APPELLEES:      J. LANE GREENLEE
PROSECUTOR:                  ADAM KIRK
NATURE OF THE CASE:          CRIMINAL - MISDEMEANOR
DISPOSITION:                 AFFIRMED - 12/16/2025
MOTION FOR REHEARING FILED:

## CONSOLIDATED WITH

## NO. 2024-KM-01028-COA

ASHLEY NICOLE TURNER A/K/A ASHLEY N.        APPELLANT
TURNER

v.

STATE OF MISSISSIPPI                        APPELLEE

DATE OF JUDGMENT:            08/15/2024
TRIAL JUDGE:                 ALAN D. LANCASTER
COURT FROM WHICH APPEALED:   GRENADA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      ASHLEY NICOLE TURNER
ATTORNEY FOR APPELLEE:       J. LANE GREENLEE
PROSECUTOR:                  ADAM KIRK
NATURE OF THE CASE:          CRIMINAL - MISDEMEANOR
DISPOSITION:                 AFFIRMED - 12/16/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Ashley Nicole Turner appeals from a judgment of the Grenada County Circuit Court, which held a bench trial de novo upon Turner's appeal from the Justice Court of Grenada County, where she was convicted of speeding and careless driving.[1] The circuit court found her guilty of both misdemeanors and assessed fines for each. Turner appeals and argues that the evidence was insufficient to support the convictions or was contrary to the weight of the evidence, and she also argues that the court impermissibly placed the burden of proof on her, the defendant, instead of on the State. Having considered the record, the arguments of the parties, and the relevant precedent, we affirm the circuit court's judgment.

**Facts**

¶2. On December 29, 2023, at 3:50 p.m., Turner was traveling south on Highway 7 from Grenada to Greenville. With her were her three children: twelve-year-old daughter, Phyllis, who was riding in the front seat, and her one-year-old daughter and son, who were in the back seat.[2] Highway Patrolman Joshua Stuto was traveling north on Highway 7 when he encountered Turner's vehicle. He claimed that he "clocked" Turner at 88 miles per hour, so he made a U-turn, activated his blue lights, and stopped her. Stuto ticketed Turner for

---

[1] The charges were separately docketed in justice court as 24-CR-25 (speeding) and 24-CR-28 (careless driving). Although the circuit court consolidated the two cases for trial, it kept the separate cause numbers, which resulted in two appeals with two separate case numbers that we consolidated on appeal.

[2] We use a pseudonym for the child to protect her privacy.

speeding and careless driving because the speeding occurred on a curve, in a hilly area, with access roads nearby.

¶3.     On April 25, 2024, the Justice Court found Turner guilty of both offenses, and on May 23, 2024, she appealed to the circuit court. The circuit court held a bench trial de novo of the charges on July 26, 2024. Stuto and Phyllis were the only witnesses to testify.

*Testimony of Stuto*

¶4.     Stuto testified that on the day of the offenses, he was traveling northbound on Highway 7 behind one car when he came to a sharp curve to the left.[3] At that point, he saw Turner's black SUV coming around the curve at a high rate of speed. Stuto testified that in the next five seconds, he confirmed a speed of 88 mph with his radar, turned around, and activated his blue lights. He then stopped Turner and ticketed her.

¶5.     Stuto stated that his radar was properly calibrated, although a certified technician—not Stuto—is responsible for the calibration. Stuto said he had documents reflecting the date of the technician's calibration, but they were in his car, not with him in court. They were never procured or admitted into evidence. Stuto further stated that he also checked the calibration every day with his tuning fork. He had tested the radar that morning in that manner, so there was nothing in the operation of the radar that would have led him to believe it was not working.

¶6.     Stuto issued a ticket for Turner's speeding—traveling 88 mph in a 55-mph zone—and

---

[3] Stuto initially said that there were no other cars on the road except for one in front of him and Turner's. However, on cross-examination, Stuto stated that after clocking Turner, he pulled over to let two cars behind him pass before he made his U-turn to initiate the stop.

for careless driving because, as he testified,

> her speed of 88 miles an hour around a blind curve and then heading towards a bunch of hills -- these are steep hills with driveways at the bottom of them. There are county roads coming out around the curves. There isn't even a straight road around here that I would consider 88 miles an hour to be safe on, much less that curvy road with steep hills. I believe she was driving carelessly, imprudent, without due regard for the curvature of that roadway and other traffic that might be on the roadway.

¶7.     On cross-examination, Stuto said he was trained to observe when vehicles would be traveling at a high rate of speed, warranting a radar check. He agreed that the calibration documentation would have conclusively confirmed that the radar was properly working that day. Stuto also said he had no photographs of the area or any evidence to show that the speeding occurred in a curve of the road. After Stuto testified, the State rested.

*Testimony of Phyllis*

¶8.     Turner called Phyllis, who testified that she was twelve years old and in the seventh grade. She confirmed she was Turner's daughter and that she was riding in the front seat when they were pulled over. Phyllis said the officer told her mother to roll down the back window, and when her mother pointed out that she had a one-year-old child back there and that it was cold outside, Stuto allegedly said, in a disrespectful way, "I don't care. Roll it - - I mean roll the window." Phyllis said Stuto was trying to be "overpowering."

¶9.     Phyllis said that they often traveled down that road because her mom worked in Greenville. She said the road was straight where the officer pulled them over. She stated that Turner was not weaving, going over the yellow line, or off to the right where a person can hear the tires. Also, it was a clear, sunny day.

4

*Argument and Ruling*

¶10.   After the child testified, Turner moved for a directed verdict, arguing that the State had failed to present any proof that the radar was calibrated.  Turner stated that "there is nothing before this court that he checked the calibration."  Therefore, the State had not met the burden of proof (i.e., beyond a reasonable doubt) of the charges.  The court denied the motion and heard final arguments from the parties.

¶11.   The court found Turner guilty of speeding, traveling 88 mph in a 55-mph zone.  Concerning the careless driving charge, the circuit court judge stated:

> Whether the road there is straight or curvy, I have no personal knowledge of the road.  I do know that there are plenty of hills there.  But, again, there was no -- I didn't hear enough testimony to establish where the speeding occurred enough for the Court to say one way or the other.  The daughter testified that he was straight where they were stopped.  I didn't hear testimony of -- that it was straight at the time they met the officer.  So there is no conflict with the witnesses' testimony.  The officer -- the officer wasn't questioned, "Was the road straight at the time of the stop?"  The only question was, "Was the road straight at the time of the reading of it."  And I didn't hear any testimony from your daughter concerning the -- the curvature of the road or the straightness of the road at the time you were clocked.

Turner countered that if they were stopped where the road was straight, and if it took Stuto only five seconds to turn and stop them, then they could hardly have gone far.  Be that as it may, the court pointed out that there was nothing presented to rebut Stuto's testimony that the road was curvy when Turner was clocked, and nothing was presented to rebut his testimony that there were hills, county roads, and other roads entering into the highway.  Therefore, the court found Turner guilty of careless driving as well.  She was fined $99.50 for the speeding charge, along with an assessment of $142.50, and she was fined $39.50 for

the careless driving charge, with $122.50 in assessments, for a total of $404.00.

*Appeal*

¶12.   On August 23, 2024, Turner appealed and argues that the evidence was insufficient to support the circuit court's ruling or contrary to the weight of the evidence.  Turner further argues that the circuit court erred in placing the burden of proof on her as the defendant instead of on the State.

**Standard of Review**

¶13.   Appeals of criminal convictions from justice court to circuit court are conducted as trials de novo.  MRCrP 29.5.  When the maximum sentence is less than six months, the case may be tried without a jury.  *Id*.  The appellate court reviews the circuit court's decision in trials of such appeals based on established standards for bench trials.  *Sendelweck v. State*, 101 So. 3d 734, 738-39 (¶19) (Miss. Ct. App. 2012).  The trial judge is "the jury," and his findings are accorded the same deference as those of a chancellor.  *Id.* at 739 (¶19).  "His findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence."  *Id*.  "The findings of the trial judge will not be disturbed unless the judge abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied."  *Edwards v. State*, 355 So. 3d 784, 787 (¶13) (Miss. Ct. App. 2023).

**Discussion**

I.      **Whether the evidence was insufficient to support the circuit court's ruling or contrary to the weight of the evidence.**

¶14.   "When reviewing a ruling on the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Schlegel v. State*, 303 So. 3d 30, 46-47 (¶59) (Miss. Ct. App. 2020). In a challenge to the weight of the evidence, the evidence is viewed in the light most favorable to the verdict, and the jury verdict (or decision of the trial court in a bench trial) will be overturned "only when it is so contrary to the evidence presented that to let it stand would sanction an unconscionable injustice." *Hawkins v. State*, 410 So. 3d 462, 468 (¶19) (Miss. 2025).

*Speeding*

¶15.   "The maximum speed limit on rural undivided (two-lane) roads in Mississippi is fifty-five miles per hour." *Slade v. City of Lumberton*, 395 So. 3d 1277, 1289 n.8 (Miss. Ct. App. 2024). Mississippi Code Annotated section 63-3-501 (Rev. 2022) sets the maximum speed for private passenger vehicles on "highways of the state" at 65 miles per hour. However, as a former Attorney General opinion explains,

> Section 63-3-503 mandates boards of supervisors to lower the speed limit to 55 miles per hour where the State Highway Commission has acted in response to federal laws; therefore, where the State Highway Commission has so acted the speed limit on county roads is automatically reduced to a maximum of 55 miles per hour, regardless of whether the board of supervisors has actually passed an ordinance or resolution setting such maximum speed limit.

Miss. Att'y Gen. Op., 1992 WL 614320, *Clark*, at 1 (Dec. 9, 1992).

¶16.   In *Foster v. State*, 271 So. 3d 720, 721 (¶¶3, 7) (Miss. Ct. App. 2018), we held that an officer's testimony that his radar indicated a vehicle was traveling 82 mph in a 65-mph zone on a Mississippi highway was sufficient to prove a speeding violation.

¶17.   In this case, Turner argues that Stuto's testimony was insufficient because he did not personally calibrate his radar equipment, and thus, he could not testify that it was functioning

7

properly. However, Turner cites no authority to support her position that a law enforcement officer must be trained in radar calibration in order to testify to a radar reading. In fact, the case she does cite, *Stidham v. State*, 750 So. 2d 1238 (Miss. 1999), supports finding the sufficiency of the evidence in this case. There, officers using a radar device clocked Stidham at 72 mph in a 55-mph zone. *Id*. at 1240 (¶2). At trial, one of the officers testified that he used a tuning fork to verify the accuracy of the radar device. *Id*. at (¶5). On appeal of his conviction, Stidham challenged whether this was a sufficient foundation for the admission of the radar readings. *Id.* at 1241 (¶8). The Mississippi Supreme Court held that proof of accuracy of the device was necessary for the admission of the reading and that use of the tuning fork was an acceptable proof. *Id*. at (¶9).

¶18. Here, as in *Stidham*, Stuto testified that he confirmed his radar was working that day by using the radar tuning fork kit provided to officers to check the functioning of their radar. Accordingly, we hold that Stuto's testimony was sufficient for the admission of the radar results and sufficient to establish the elements of a speeding violation, i.e., that Turner was traveling on a Mississippi highway in Grenada County in excess of the speed limit. Moreover, we find that the evidence presented was not contrary to the overwhelming weight of the evidence.

*Careless Driving*

¶19. The elements of careless driving are found in Mississippi Code Annotated section 63-3-1213 (Rev. 2022):

> Any person who drives any vehicle in a careless or imprudent manner, without
> due regard for the width, grade, curves, corner, traffic and use of the streets

and highways and all other attendant circumstances is guilty of careless driving. Careless driving shall be considered a lesser offense than reckless driving. Every person convicted of careless driving shall be punished by a fine of not less than Five Dollars ($5.00) nor more than Fifty Dollars ($50.00).

We have held that a conviction of careless driving can be sustained based on the uncorroborated testimony of a single officer. *Varvaris v. City of Pearl*, 723 So. 2d 1215, 1216 (¶5) (Miss. Ct. App. 1998). In that case, a Pearl police officer observed Varvaris weaving between the two northbound lanes of Pearson Road. *Id*. at 1216 (¶2). The officer did not stop him until Varvaris had pulled into the driveway of his wife's apartment. *Id*. At that point, the officer called for back-up assistance, who administered a sobriety test, which Varvaris passed. *Id.* Varvaris was still ticketed for careless driving. *Id*. at (¶3). Varvaris denied the charge and argued that he was pulled over because he had been driving slowly (20 to 25 mph in a 35-mph zone), after midnight, with an out-of-county plate. *Id.* He also asserted that the officer became argumentative and pushed him. *Id*. At trial, the officer, Varvaris, and his wife testified. *Id.* A jury convicted him, and on appeal, Varvaris argued that the testimony of the officer alone was not sufficient to establish his guilt beyond a reasonable doubt given the lack of supporting evidence. *Id*. at (¶5). We rejected this argument, citing *Ragland v. State*, 403 So. 2d 146, 147 (Miss. 1981), where the Mississippi Supreme Court held that the testimony of a single witness is sufficient "even though there may be more than one witness testifying to the contrary." *Varvaris*, 723 So. 2d at 1216 (¶5). Nor did the fact that Varvaris was not intoxicated affect the careless-driving conviction because a person might weave across lanes even when sober. *Id*. at (¶6). We still held that the evidence was sufficient to support the conviction. *Id*. at 1217 (¶7).

9

¶20. In the case at hand, Stuto testified that Turner was speeding as she went around a curve in a hilly area with access roads and driveways nearby. Although Phyllis testified that Stuto stopped them on a straight portion of the road, there was no proof in the record to rebut Stuto's testimony that he clocked her speeding in the curve. "The trial judge has sole authority to determine the credibility of a witness when sitting as the trier of fact in a bench trial." *Reed v. State*, 749 So. 2d 179, 181 (¶3) (Miss. Ct. App. 1999). Thus, even if the circuit judge here was not personally aware of the curves in the road, he had full authority to accept Stuto's testimony concerning the factors that made Turner's speeding also careless driving. "This Court does not reweigh the evidence or make witness-credibility determinations." *Howell v. State*, 408 So. 3d 1276, 1281 (¶10) (Miss. Ct. App. 2024). Accordingly, we find no merit to Turner's arguments concerning the sufficiency of the evidence in this charge. Moreover, we find that the evidence presented was not contrary to the verdict reached by the court.

**II. Whether the circuit court erred in allegedly placing the burden of proof on her as the defendant instead of on the State.**

¶21. Turner argues that the circuit court erroneously placed the burden of proof on her instead of on the State. She points to comments the court made about testimony it did not hear from Turner's witness. For example, the circuit judge said he did not hear her witness testify that there were no access roads or driveways along the stretch of the road where the speeding occurred, nor was there any testimony that there was no speeding as the vehicle was in the curve, as Stuto testified. Turner contends that these statements reflect an impermissible shifting of the burden of proof.

¶22. "In a criminal case, the burden of proof remains always with the prosecution on each element of the offense." *Moore v. State*, 348 So. 3d 322, 329 (¶26) (Miss. 2022). The burden of proof never shifts from the State to the defendant. *Johnson v. State*, 89 So. 3d 630, 637-38 (¶23) (Miss. Ct. App. 2011). In the case at hand, the State presented Stuto's testimony, which established the elements of both speeding and careless driving, namely that radar had registered Turner's speed at 88 mph in a 55-mph zone on a curve in a hilly area with access roads nearby. Turner presented the testimony of one witness, Phyllis. Although Phyllis testified that the officer stopped them on a straight part of the road, she was not asked any questions about how the vehicle was traveling while in the curve or how fast it was going.

¶23. "In a bench trial, the trial judge is 'the jury' for purposes of resolving issues of fact." *Briggs v. State*, 337 So. 3d 716, 719 (¶17) (Miss. Ct. App. 2022). Moreover, we have held that "[t]he findings of a trial judge sitting without a jury are reversed only where the findings are manifestly erroneous or clearly wrong." *Harvey v. State*, 195 So. 3d 231, 232 (¶5) (Miss. Ct. App. 2016). In this case, we find that the judge's comments about what he did not hear did not constitute an impermissible shifting of the burden of proof. Rather, the court was commenting on the evidence it had to weigh as the finder of fact in reaching its decision, which was that the evidence presented established Turner's guilt of the charges against her. Accordingly, we find no merit to this issue.

**Conclusion**

¶24. Because the evidence presented by the State established the elements of the charges

11

against Turner and because the circuit court did not shift the burden of proof, we affirm Turner's convictions of speeding and careless driving and the sentences imposed upon her.

¶25.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**